UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLIFTON SCOTT DILLEY<br>*Plaintiff,* | : | |
| VERSUS | : | CIVIL NO. |
| STATE OF LOUISIANA,<br>DEPARTMENT OF PUBLIC SAFETY<br>AND CORRECTIONS,<br>OFFICE OF STATE POLICE,<br>AND KASHA DOMINGUE<br>*Defendants.* | : | |

**COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes plaintiff, CLIFTON SCOTT DILLEY ("DILLEY"), who respectfully represents the following:

Dilley brings this action to recover compensatory damages, punitive damages, reasonable attorneys' fees, judicial interest, and all costs and expenses incurred in these proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the Constitution of the United States of America, other applicable statutes and constitutional provisions, and Louisiana law, based upon the following:

**PARTIES**

1. Clifton Scott Dilley is a citizen of the United States of America and a resident of the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.

2. Made defendants herein are the following:

a. Trooper Kasha Domingue, a person of the full age of majority, whose actual domicile and residence are unknown, but who is believed to be a resident of the State of Louisiana and who was employed at all pertinent times herein by

the State of Louisiana, and/or including the Department of Public Safety and Corrections, and/or including the Office of State Police (the "State Police"); and

b. State of Louisiana, and/or including the Department of Public Safety and Corrections, and/or including the Office of State Police.

3. Trooper Domingue is being sued herein in her individual capacity.

4. The State of Louisiana, and/or including the Department of Public Safety and Corrections, and/or including the Office of State Police is being sued herein insofar as it is vicariously and directly liable for the actions of State Police Officer Domingue pursuant to Dilley's state law claims pled herein.

**JURISDICTION AND VENUE**

5. This is a civil action seeking damages against defendant, Trooper Domingue, for committing acts, under color of law, which deprived Dilley of rights secured under the Constitution and laws of the United States, as guaranteed to the plaintiff by the Fourth Amendment to the United States Constitution, and other statutes and constitutional provisions.

6. This court has jurisdiction of this cause under 28 U.S.C. §§ 1331 and 1343 for claims asserted pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction of this Court is further invoked pursuant to 28 U.S.C § 1367, in its exercise of supplemental jurisdiction over Louisiana state law claims that are so related to claims in the action within the District Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**STATEMENT OF FACTS**

8. Kasha Domingue, at all pertinent times herein, was a law enforcement officer employed as a Louisiana State Police Trooper, by the State of Louisiana, and/or including the Department of Public Safety and Corrections, and/or including the Office of State Police (the “State Police"), and she was acting in the course and scope of said employment during the commission of the acts complained of herein.

9. On July 9, 2018, Trooper Domingue was on patrol when, at approximately 7:42 p.m., she stopped a Nissan Altima on La. Hwy 427 for not having a license plate. The car had a driver and a passenger. As she was questioning the driver, the passenger exited the Altima and ran. Trooper Domingue gave chase and deployed her taser at the fleeing passenger, but did not make contact with him. She later drafted a Use of Force Report, in which she indicated that the fleeing passenger was evading arrest and posed an “immediate threat to the safety of any officer(s)/others” because he was carrying a bag with “unknown contents.”

10. Later in her shift, in the early morning of July 10, 2018, at nearly 3:20 a.m., Trooper Domingue, as a part of her regular and official employment as a law enforcement officer for the State, was operating a patrol car owned and maintained by the State for the use and benefit of its state police department on La. 427 in East Baton Rouge Parish and stopped a red, Saturn car travelling in front of her for allegedly making an illegal U-turn. The Saturn came to a stop on Potwin Street in the parking lot behind the commercial business, Village Grocery, in East Baton Rouge Parish.

11. Trooper Domingue parked her car at a staggered short distance, roughly nine and a half feet (from tire to tire) behind the Saturn, so that the right side of her patrol vehicle lined up approximately with the left side of the Saturn. The Saturn was parked at a slight angle toward the

eleven o'clock position in relation to Domingue's patrol car. The driver of the Saturn immediately exited the car, and Trooper Domingue ordered the driver to show his hands, which he did. Nineteen-year-old Dilley was a passenger of the Saturn along with two other persons.

12. Trooper Domingue started to question the driver, who was the only occupant of the Saturn who was outside the vehicle. As Trooper Domingue entered her patrol vehicle, ostensibly to check the driver's registration and license, the driver ran between the patrol vehicle and his Saturn, and ran around the Saturn on the right side, yelling to his passengers to "run."

13. Dilley and one other passenger exited the Saturn. The right rear passenger, who Trooper Domingue described as a "large black male" ran away from Trooper Domingue following in the same path of the driver in the opposite direction of the patrol vehicle and Trooper Domingue.

14. As Dilley was exiting from his left rear passenger seat, Trooper Domingue was also exiting her vehicle. Dilley immediately turned to run behind the Saturn and was running between the Saturn and patrol vehicle, as Trooper Domingue who was initially moving toward the Saturn, stopped, pivoted toward Dilley and shot Dilley in his lower back.

15. After Trooper Domingue shot Dilley, she stumbled and fell to her knees. Trooper Domingue then got up, walked over to Dilley and handcuffed him as he lay on the ground unable to move his legs.

16. Leaving Dilley handcuffed on the ground, Trooper Domingue proceeded to arrest the front right-side passenger, who had remained in the Saturn, with her service pistol still pulled and pointed at him.

17. Trooper Domingue then radioed dispatch with a certain code which indicates the use of a Taser.  Had Trooper Domingue used the appropriate code to indicate she had shot

someone, paramedics would have responded accordingly. Instead, Dilley received less urgent, delayed care, and officers arrived at the scene without knowing that Domingue had shot Dilley in the back.

18. Upon information and belief, including statements in the press by employees and/or representatives of the State Police, video of the entire event was not recorded from either the body camera which Trooper Domingue wore or the camera normally located on the dash of her patrol vehicle.

19. Trooper Domingue proceeded to fabricate a completely false account of the shooting of Dilley. In her Use of Force Report, Domingue made the following false statements in an attempt to justify her shooting of Dilley:

   a. In her detailed narrative of the report she stated she first grabbed her taser, but then drew her state issued service weapon. She goes on to recount falsely that the "[r]ear passenger, white male, on the left side excited as the Trooper was near the license plate area [when in fact she was located near the door of her patrol vehicle] and charged through Trooper with a black item in his left hand. Suspect was struck in right side torso as the force from body contact knocked Trooper to the ground."

   b. In the "Additional Details" section of the report she alleges that Dilley "charged Trooper, knocking [her] to the ground and was struck in the right side torso." She also asserted that "suspect [Dilley] had an unidentifiable black item in raised hand as he charged and connected with Trooper."

   c. Trooper Domingue additionally listed several "situational factors" in her Use of Force Report, including "[i]nability to call for assistance" and "[i]nability to

disengage," calling into question an additional credibility issue or a third failure of State Police equipment.

d. After the shooting, Trooper Domingue, rather than hurriedly crawling over to Dilley as she reported in her Use of Force Report, she simply stood up, fixed her clothing, and deliberately walked over to where Dilley lay, demonstrating that she was not fearful that Dilley was armed or posed any danger to her.

20. Fortuitously for Dilley, who would have been accused of an attack on a police officer, a surveillance camera located at the back of the Village Grocery business did not malfunction and recorded the complete incident, showing unequivocally that Trooper Domingue's story of being attacked was completely false, and that she instead shot a fleeing, unarmed passenger of a car stopped for a minor traffic violation who posed no threat to Trooper Domingue.

21. Dilley did nothing to justify Trooper Domingue's conduct. Dilley did not reasonably pose a threat to Trooper Domingue or anyone else that would justify the use of deadly force on Dilley, a passenger in a vehicle stopped for a minor traffic violation. Trooper Domingue had no cause to believe that Dilley posed a threat of serious physical harm, either to herself or others. Under these circumstances, the conduct of Trooper Domingue was intentional, excessive, unlawful, malicious, oppressive, and deliberately indifferent to Dilley's rights, and no reasonable law enforcement officer would believe that her conduct did not violate clearly established law to be free from excessive force.

22. By reason of the conduct of Trooper Domingue, including the assault, battery, and unreasonable seizure of Dilley, he sustained significant injuries, including, lumbar spinal cord injury, closed fracture of fourth lumbar vertebra, large bullet fragments in the lumbar spinal

canal, incomplete paraplegia, comminuted spinal fractures around the second and third lumbar vertebrae, low back pain and neuromuscular dysfunction, and is entitled to obtain damages including but not limited to:

a. Medical expenses, past and future;

b. Lost wages and/or earnings capacity, past and future;

c. Past and future physical pain and suffering;

b. Past and future mental pain and suffering;

c. Loss of enjoyment of life;

d. Mental anguish and emotional damages;

e. Harassment and embarrassment; and

f. All other damages that may be established at trial.

## CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983 CLAIM AGAINST KASHA DOMNGUE FOR USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUION

23. All portions of the Complaint are incorporated herein by reference.

24. The conduct of Trooper Domingue was a violation of Dilley's right to be free from an unreasonable seizure under the Fourth Amendment of the United States Constitution, as secured by 42 U.S.C. § 1983.

25. Acting under color of law, Trooper Domingue knowingly, recklessly, and with deliberate indifference and callous disregard for Dilley's rights, used excessive force in shooting Dilley and causing him severe injury, which thereby deprived Dilley of his rights to be free from an unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

26. Trooper Domingue's conduct in shooting Dilley, a passenger in a car stopped for allegedly making an illegal U-turn, when Dilley was running away from Trooper Domingue was both objectively and subjectively unreasonable, given the circumstances, because no reasonable officer could have believed that it was lawful to shoot an unarmed fleeing passenger on a routine traffic stop when no one, especially including Trooper Domingue, was in danger of harm from Dilley's behavior.

27. Trooper Domingue's actions after the fact demonstrate that she could not have reasonably believed her actions were lawful in light of clearly established law and the actual information she possessed. Trooper Domingue's falsifying her Use of Force Report, including that Dilley attacked her, demonstrates that she knew it was clearly established that it was unconstitutional to shoot a fleeing witness to a minor traffic offense, especially when he posed no threat to the safety of the officer or any others.

**COUNT II – STATE LAW CLAIMS**

28. All portions of the Complaint are incorporated herein by reference.

**A. Fault by Trooper Domingue and Vicarious Liability of State Police**

29. The State of Louisiana, and/or including the Department of Public Safety and Corrections, and/or including the Office of State Police was the employer of Trooper Domingue, who was acting within the course and scope of her employment during the aforementioned acts and is liable for her state law torts pursuant to the doctrine of *respondeat superior*, which doctrine is specifically pleaded herein.

30. Pursuant to La. Code Civ. Proc. art. 2315, Dilley asserts state tort actions against Trooper Domingue.

31. The actions of Trooper Domingue constitute fault under La. Code Civ. Proc. art. 2315, which entitle Dilley to assert this tort action.

32. As a result of Trooper Domingue's fault, Dilley is entitled to recover damages for the losses he sustained as a result of Trooper Domingue's conduct, including, but not limited to, past and future medical expenses, past and future lost wages and/or earning capacity, past and future physical pain and suffering, past and future mental pain and suffering, loss of enjoyment of life, mental anguish and emotional damages, harassment and embarrassment, and all other damages that may be established at trial.

**B. State Police Failure to Supervise and Train**

33. The State of Louisiana, and/or including the Department of Public Safety and Corrections, and/or including the Office of State Police was the employer of Trooper Domingue had a duty to properly train and supervise Trooper Domingue.

34. Upon information and belief, the State Police failed to properly train Trooper Domingue on, among other things, use of force. In particular, State Police failed to train officers on the constitutional limitations regarding the use of deadly force to apprehend fleeing subjects. By failing to train officers, the harm suffered by Mr. Dilley was predictable.

35. Further, the State Police failed to properly supervise Trooper Domingue in the following, non-exclusive, acts or omissions:

   a. Failing to enforce the State Police Body-Worn and In-Car Camera Systems Policy which requires Troopers to wear and record contacts with the public;

   b. Failing to enforce the State Police Body-Worn and In-Car Camera Systems Policy which requires Troopers to ensure proper care and operability of the body-worn and in-car camera system;

    c. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Troopers, especially Trooper Domingue; and

d. Inadequately training, controlling, assigning and discipling Troopers, especially including Trooper Domingue, who the State Police knew, or in the exercise of reasonable care should have known, had the dangerous propensities and character traits for abusing their authority and for using excessive force.

**DAMAGES**

36. As a result of the foregoing, Dilley is entitled to an award of compensatory damages, including both special and general damages, with judicial interest from the date of judicial demand, against defendants *in solido*.

37. Because Trooper Domingue exhibited reckless or callous indifference to the federally protected rights of Dilley, he is entitled to an award of punitive damages against her pursuant to 42 U.S.C. § 1983.

38. In addition to compensatory and punitive damages, Dilley is entitled to an award of judicial interest from the date of judicial demand, for the following damages:

a. Past and future medical expenses;

b. Past and future lost wages and/or earnings capacity;

c. Past and future physical pain and suffering;

b. Past and future mental pain and suffering;

c. Loss of enjoyment of life;

d. Past and future mental anguish and emotional damages;

e. Harassment and embarrassment; and

f. All other damages that may be established at trial.

**REQUEST FOR ATTORNEY'S FEES**

39. Dilley is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**REQUEST FOR JURY TRIAL**

40. Dilley requests to have this case tried by a jury and shows that he is entitled to same.

**PRAYER**

WHEREFORE, plaintiff, Clifton Dilley, respectfully prays that after due proceedings are had that there be judgment rendered in his favor, holding defendants liable as requested in this complaint and awarding appropriate damages, interest, attorney's fees and costs as requested in this complaint.

Respectfully Submitted,

CAZAYOUX EWING, LLC

/s/ Donald J. Cazayoux, Jr.
Donald J. Cazayoux, Jr. (20742)
J. Lane Ewing, Jr. (29854)
257 Maximilian Street
Baton Rouge, LA 70802
Telephone: 225-650-7400
Facsimile: 225-650-7401
E-mail: don@cazayouxewing.com
E-mail: lane@cazayouxewing.com

**ATTORNEYS FOR PLAINTIFF**