## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**CLIFTON SCOTT DILLEY**                                  **CIVIL ACTION NO.**

**VERSUS**                                                **19-391-BAJ-EWD**

**STATE OF LOUISIANA, ET AL.**

## <u>RULING AND ORDER</u>

Before the Court is the Motion to Quash Notices of Depositions or for Protective Order ("DPSC's Motion to Quash"),[1] filed by the Louisiana Department of Public Safety & Corrections (Office of State Police) ("DPSC"), which seeks an order quashing the Notices issued by Plaintiff Clifton Scott Dilley ("Plaintiff") for the depositions of Cpt. Derrell Williams, Master Trp. Barry Ward, Trp. Matthew Wallace, Trp. Burnell Thompson, III, Trp. Brian Jefferson, and Trp. James McGehee (collectively, the "Noticed Troopers") or, alternatively, for a protective order "protecting the Noticed Troopers from having to testify as part of the qualified immunity inquiry." After a telephone conference with the Court,[2] DPSC and Plaintiff conferred and resolved the issues raised in DPSC's Motion to Quash, so DPSC moved to withdraw its Motion to Quash ("Motion to Withdraw").[3] The Motion to Withdraw will be granted and DPSC's Motion to Quash will be withdrawn.[4]

Also before the Court is the Motion to Join DPSC's Motion to Quash, filed by Defendant Kasha Domingue ("Domingue").[5] Because DPSC's Motion to Quash was withdrawn, the Court will construe Domingue's Motion to Join as a standalone Motion to Quash Notices of Depositions

---

[1] R. Doc. 70.
[2] R. Doc. 75.
[3] R. Doc. 78.
[4] Relatedly, because the DPSC's Motion to Quash will be withdrawn, DPSC's Motion for Expedited Hearing on that motion will be terminated as moot. *See* R. Doc. 71.
[5] R. Doc. 74. Domingue adopts many of the same arguments raised by DPSC but also raises additional arguments.

or for Protective Order ("Domingue's Motion to Quash").[6] Plaintiff opposes Domingue's Motion to Quash,[7] and Domingue has filed a reply memorandum.[8]

For the reasons below, Domingue's Motion to Quash will be granted in part, and the Court will issue a protective order with respect to the deposition of Master Tpr. Barry Ward,[9] limiting his testimony to information within his personal knowledge related to the issue of qualified immunity, as more fully explained below. Domingue's Motion to Quash will be denied in all other respects.

## I.    BACKGROUND

Plaintiff sues Domingue in her individual capacity for excessive force for shooting him on July 10, 2018 after a traffic stop of a vehicle in which Plaintiff was a passenger (the "Incident"). Plaintiff claims DPSC is vicariously liable for Domingue's actions and independently negligent for failure to supervise and train.[10] Domingue has asserted the defense of qualified immunity.[11]

---

[6] R. Doc. 74.

[7] R. Doc. 76. Plaintiff filed a Motion to File Under Seal its Memorandum in Opposition to Domingue's Motion to Quash and for leave to file an exhibit conventionally. As to the request to seal, Plaintiff argues that (1) the opposition memorandum "references and contains discovery that was produced by [DPSC] and designated as 'Confidential Information'" and (2) Exhibit B to the opposition memorandum is a "video that was designated 'Confidential Information,'" pursuant to the parties' Consent Protective Order and Confidentiality Agreement ("Protective Order") (R. Doc. 41). Because (a) the sole basis for Plaintiff's request to seal his opposition memorandum is that it references and/or attaches materials that were marked as "Confidential Information" pursuant the parties' Protective Order, (b) contains no analysis of the "stricter balancing standard" used to determine whether any documents may be filed into the record under seal as required under *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416-421 (5th Cir. 2021), and (c) there is a presumption in favor of the public's access to judicial records, Plaintiff has not made a sufficient showing to warrant filing under seal. The Motion to File under Seal and attached documents will be maintained under seal at this time. No later than fourteen (14) days from the date of this Ruling and Order Plaintiff may submit a supplemental memorandum in support of sealing that adequately addresses the applicable legal standard. If a supplemental memorandum is not timely filed, all documents will be filed into the record without seal. Plaintiff's request to file an exhibit conventionally, which seeks to file video footage of the Incident, will be denied. While both parties attempt to summarize what is contained in the video footage, given the Limited Topics for Master Tpr. Ward's deposition, consideration of the video footage is not necessary in connection with the pending motions.

[8] R. Doc. 82.

[9] The Court will refer to Master Trooper Barry Ward as "Master Tpr. Ward" throughout this Ruling. As such, all designations referring to Master Tpr. Ward in some other fashion, such as Master Trooper, M/T Ward, etc., have been changed for consistency.

[10] R. Doc. 1.

[11] R. Doc. 19, p. 8, at Fourth Defense.

Considering the assertion of qualified immunity, coupled with the ongoing criminal investigation and/or prosecution of Domingue, the parties filed a Joint Notice of Agreement to Stay Discovery earlier in the case. As a result, discovery in this matter was originally stayed for 120 days.[12] The stay was extended several times.[13] During the stay of discovery, Domingue filed quarterly status reports apprising the Court and all parties of the status of the underlying investigation and/or prosecution.[14] On October 18, 2021, the Court found good cause to stay and administratively close this matter because Domingue's criminal proceeding was still pending with no trial date.[15] On Plaintiff's Motion to Reopen the Case and for Status Conference,[16] which no party opposed,[17] this matter was reopened on October 6, 2022, and a status conference was held on November 8, 2022.[18] During the conference, the Court issued a Scheduling Order with the following dates: (1) "the Parties shall complete limited discovery on the issue of qualified immunity by January 31, 2023"; and (2) "Defendant shall file dispositive motions on or before February 21, 2023."[19]

Thereafter, Domingue filed an *Ex Parte* Unopposed Motion for Leave to Take Deposition of Prisoner, seeking an order authorizing Domingue to "take the video deposition of Kalief Rasean Sconiers," an inmate "currently confined at the Georgia Diagnostic and Classification Prison," who was purportedly the "front right-side passenger" in the same car in which Plaintiff was the "left rear passenger" at the time of the Incident alleged in the Complaint.[20] The Court granted

---

[12] R. Docs.23-25.
[13] *See* R. Docs. 26, 27, 28, 29, 30.
[14] *See* R. Docs. 31, 32, 42, 46, 47, 48.
[15] R. Doc. 50.
[16] R. Doc. 54.
[17] R. Docs. 56, 59.
[18] R. Doc. 60.
[19] R. Doc. 62.
[20] R. Docs. 67 & 67-1. *See also* R. Doc. 1.

Domingue's motion, and Sconiers is set to be deposed on January 23, 2023 at 1:00 p.m. (or some other mutually agreeable date and time).[21]

Domingue's Motion to Quash (as well as DPSC's now withdrawn Motion to Quash) followed. A telephone conference to discuss these motions was held on December 12, 2022, during which the parties explained their respective positions regarding whether the Noticed Troopers, including Master Tpr. Ward, could provide any testimony relevant to the issue of qualified immunity, the impact of the video of the Incident on the qualified immunity analysis, considering the Supreme Court's opinion in *Scott v. Harris*,[22] and related issues.

## II.    LAW AND ANALYSIS

### A.    Standard on Motions to Quash and Motions for Protective Order

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[23] and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[24] The Court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope

---

[21] R. Doc. 69.

[22] 550 U.S. 372, 380 (2007).

[23] *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), citing Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

[24] Fed. R. Civ. P. 26(b)(1).

permitted by Rule 26(b)(1)."[25] "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[26] Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[27]

### B.    Qualified Immunity

"Qualified immunity shields an officer from liability if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' To overcome qualified immunity, a plaintiff must show that [the officer] (1) violated a constitutional right and (2) that the right at issue was 'clearly established' at the time of [the] alleged misconduct."[28] To meet the "clearly established" prong, existing precedent must "squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the official did."[29]

### C.    Analysis

As part of its agreement with DPSC, Plaintiff withdrew the Notices of Deposition issued to Cpt. Derrell Williams, Tpr. Matthew Wallace, Tpr. Burnell Thompson, III, Tpr. Brian Jefferson, and Tpr. James McGehee,[30] which Domingue acknowledges moots her motion with respect to the depositions of these individuals.[31] Also as part of his agreement with DPSC, Plaintiff has limited the scope of Master Tpr. Ward's deposition as follows:[32]

---

[25] Fed. R. Civ. P. 26(b)(2)(C).
[26] Fed. R. Civ. P. 26(c)(1).
[27] *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998), quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).
[28] *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (citations omitted).
[29] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (cleaned up).
[30] R. Doc. 78.
[31] R. Doc. 82, at n. 4.
[32] *See* R. Doc. 78, p. 2.

[T]to questions pertinent to the issue of qualified immunity within Master Tpr. Ward's knowledge – the scope of which is expected to include but will not be limited to the following:

1.    Testimony expected to pertain to the placement of the vehicles at the time of the events in question, as well as Kalief Sconiers', Jeremiah's, Jamal Mire's, Clifton Scott Dilley's, and Trooper Kasha Domingue's locations on scene immediately before, during, and after the shooting, which also will encompass the location of any items discovered at the scene thereafter; and

2.    Testimony expected to pertain to statements made by Kasha Domingue to Master Trooper Ward pertinent to the issue of qualified immunity, which also will encompass any statements made by Kasha Domingue that may be contradictory to video evidence and/or statements made at the scene to Master Trooper Ward.

R. Doc. 78, p. 2 (the "Limited Topics"). Domingue does not object to Master Trp. Ward's testimony about "unrecorded statements Ms. Domingue allegedly made to him at the scene after Mr. Dilley was shot," "what he personally witnessed during the course of the investigation," authentication "of at least some of the attachments to his [investigative] report such as the photos taken by the Louisiana State Police at the scene, the video from the Village Grocery surveillance camera, the application for the search warrant [he] used to obtain the surveillance video, and the audio/video statements taken by him during the investigation."[33] Domingue does object to Master Tpr. Ward offering his opinion as a scene reconstruction expert or other expert "since that testimony goes beyond his role in the investigation and the scope of the Investigative Report he prepared." Domingue also objects to Master Tpr. Ward offering testimony that summarizes the contents of recordings, writings, or photographs.[34]  The only issue remaining before the Court is whether Domingue has established good cause for a protective order limiting the deposition of

---

[33] R. Doc. 82, pp. 3-4.
[34] *Id.*

Master Tpr. Ward to exclude testimony as a scene reconstruction or other expert, which is outside the scope of his Investigative Report of the Incident, testimony that includes inadmissible hearsay, and any testimony that summarizes the contents of recordings, writings, or photographs in violation of Fed. R. Evid. 1002.

Domingue's concerns about the possibility of "inadmissible hearsay" in Master Tpr. Ward's deposition (or contained in the exhibits discussed in or attached to his deposition) and testimony concerning the contents of writings, recordings, or photographs in violation of Fed. R. Evid. 1002 are unfounded. As the parties are aware, Rule 26(b) explicitly provides that "[i]nformation…need not be admissible in evidence to be discoverable." Additionally, Fed. R. Civ. P. 30(c)(2) provides that "[a]n objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, *but the examination still proceeds; the testimony is taken subject to any objection.*" (emphasis added). Domingue's arguments conflate discoverability with admissibility, and her request for a protective order prophylactically preventing all hearsay testimony and summaries that violate Rule 1002 could be denied on this ground alone.

But additional reasons also compel the conclusion that a more restrictive protective order to address Domingue's concerns about Master Tpr. Ward's deposition is not warranted. First, as the mover, Domingue bears the burden of establishing good cause for the entry of a protective order, and her arguments fall short of showing the "necessity" of a protective order more restrictive than the Limited Topics as there is no "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[35] Domingue's generic request for a

---

[35] *See In re Terra Int'l, Inc.*, 134 F.3d at 306, quoting *Garrett*, 571 F.2d at 1326 n. 3.

protective order preventing all "hearsay" is devoid of any particulars, or context, by which the Court could determine at this point—*i.e.*, before Master Tpr. Ward's deposition—whether some to-be-offered testimony/exhibit is in fact hearsay.[36] Second, the bulk of Domingue's arguments regarding hearsay testimony/evidence relate to the *potential* future uses of that information by Plaintiff to oppose any motion for summary judgment filed by DPSC and/or Domingue under the limited scheduling order.[37] Domingue's argument about possible testimony that impermissibly summarizes writings, recordings and photographs suffers from the same problem. There are specific provisions in the Federal Rules of Civil Procedure to address, and allay, Domingue's concerns. For example, Rule 56(c)(2) specifically provides that "[an]y party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."   In other words, Domingue's arguments are more properly made when, and if, Plaintiff attempts to use information Domingue believes to be inadmissible in connection with summary judgment motions that may be filed (or at trial).

Domingue's contention that a protective order is warranted to prevent Plaintiff from eliciting "opinion" and/or "expert" testimony from Master Tpr. Ward is likewise unpersuasive.

---

[36] Under the Fed. R. Evid. 802, "[h]earsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." As this rule contemplates, there are certain situations in which hearsay is admissible. For example, Rule 801(d) lists two types of statements—*i.e.*, a "declarant-witness's prior statement" and an "opposing party's statement"—that may be colloquially referred to as hearsay but are, by definition, not hearsay. Similarly, Rules 803 and 804 provide numerous examples of statements that are "not excluded by the rule against hearsay." For these reasons, Domingue's request for a protective order against future "hearsay" statements unmoored to any specific statement or facts of this case is needlessly complicated, unworkable, and premature. Rather, to the extent Domingue believes a statement made, or information discussed, in Master. Tpr. Ward's deposition is hearsay, she should make a contemporaneous objection and raise that issue again at the appropriate time.

[37] In support of her argument for a protective order preventing admission of a copy of Master Trp. Ward's report because it has not been redacted to exclude hearsay, and to prevent him from offering information about what non-party witnesses told him at the scene after the shooting, Domingue argues that the "testimony and evidence is inadmissible hearsay which cannot be used to oppose any Motion for Summary Judgment on qualified immunity that might be filed by Ms. Domingue." R. Doc. 82, pp. 7-8. Again, this argument conflates discoverability and admissibility. Any specific objections should be made during Master Trp. Ward's deposition and presented to the Court at the appropriate time.

There has been no indication from Plaintiff that he intends to designate and/or use Master Tpr. Ward as an expert. Indeed, the Limited Topics, to which Plaintiff has agreed, specifically limit the deposition to information "*within Master Tpr. Ward's knowledge*."[38] However, to the extent any party believes Master Tpr. Ward's "knowledge, skill, experience, training, or education" qualify him to offer opinion testimony under Fed. R. Evid. 702, *et seq*., that party must comply with applicable disclosure requirements under the Federal Rules of Civil Procedure, as well as the Federal Rules of Evidence, and any opposing party will likewise have an opportunity to challenge Master Tpr. Ward's qualifications to provide such testimony … at the appropriate time. This is not that time. Domingue has not met her burden of establishing good cause to further limit the deposition of Master Tpr. Ward beyond the limitations already agreed to by Plaintiff.

## III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion to Withdraw Motion to Quash Notices of Depositions or for Protective Order,[39] filed by the Louisiana Department of Public Safety & Corrections (Office of State Police), is **GRANTED**. DPSC's Motion to Quash Notices of Depositions or for Protective Order[40] is **WITHDRAWN**.

**IT IS FURTHER ORDERED** that, considering the withdrawal of DPSC's Motion to Quash Notices of Depositions or for Protective Order, along with the December 12, 2022 telephone conference,[41] the Motion for Expedited Hearing on the Motion to Quash Notices of Depositions or for Protective Order[42] is **TERMINATED AS MOOT**.

---

[38] R. Doc. 78, p. 2 (emphasis added).
[39] R. Doc. 78.
[40] R. Doc. 70.
[41] R. Doc. 75.
[42] R. Doc. 71.

**IT IS FURTHER ORDERED** that considering the withdrawal of DPSC's Motion to Quash Notices of Depositions or for Protective Order, the Motion for Joinder with DPSC's Motion to Quash Notices of Depositions or for Protective Order,[43] filed by Defendant Kasha Domingue, will be **CONSTRUED** as a separate Motion to Quash Notices of Depositions or for Protective Order ("Domingue's Motion to Quash").

**IT IS FURTHER ORDERED** that the Motion to File Under Seal Plaintiff's Memorandum in Opposition to Domingue's Motion to Quash and Plaintiff's Motion for Leave to File Exhibit Conventionally,[44] is **DENIED IN PART AND DEFERRED IN PART**. The Motion to File Under Seal is **DENIED** with regard to the Plaintiff's request to file Exhibit 4 to his opposition memorandum conventionally with the Clerk of Court. Consideration of the exhibit is not necessary to resolution of the pending motions. The Motion to File Under Seal is **DEFERRED** with regard to the request to file the Motion and attached documents under seal. The Clerk of Court is instructed to maintain the Motion to File under Seal and attached documents **UNDER SEAL** at this time. No later than fourteen (14) days from the date of this Ruling and Order, Plaintiff may submit a supplemental memorandum in support of sealing that adequately addresses the applicable legal standard as explained in this Ruling and Order. If a supplemental memorandum is not timely filed, all documents will be filed into the record without seal.

**IT IS FURTHER ORDERED** that Domingue's Motion Quash is **GRANTED IN PART** to enter a protective order limiting the deposition of Master Tpr. Ward, as agreed by Plaintiff, as follows:

> [T]to questions pertinent to the issue of qualified immunity within [Master Tpr.] Ward's knowledge – the scope of which is expected to include but will not be limited to the following:

---

[43] R. Doc. 74.
[44] R. Doc. 76.

1.    Testimony expected to pertain to the placement of the vehicles at the time of the events in question, as well as Kalief Sconiers', Jeremiah's, Jamal Mire's, Clifton Scott Dilley's, and Trooper Kasha Domingue's locations on scene immediately before, during, and after the shooting, which also will encompass the location of any items discovered at the scene thereafter; and

2.    Testimony expected to pertain to statements made by Kasha Domingue to Master Trooper Ward pertinent to the issue of qualified immunity, which also will encompass any statements made by Kasha Domingue that may be contradictory to video evidence and/or statements made at the scene to Master Trooper Ward.

Domingue's Motion to Quash is **DENIED** in all other respects.

Signed in Baton Rouge, Louisiana, on January 3, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

11