# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

October 04, 2024

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

   No. 23-30914   Dilley v. Domingue
                    USDC No. 3:19-CV-391

The court has taken the following action in this case:

The Court has re-issued the opinion for publication in the above case.

                          Sincerely,

                          LYLE W. CAYCE, Clerk

                          By: _____
                          Whitney M. Jett, Deputy Clerk
                          504-310-7772

Mr. James H. Brown Jr.
Mr. Donald J. Cazayoux Jr.
Mr. John Lane Ewing Jr.
Mr. Allen J. Krouse III
Mr. Michael L. McConnell
Ms. Suzanne Marie Risey

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 1, 2024
Lyle W. Cayce
Clerk

No. 23-30914

─────────────

Clifton Scott Dilley,

*Plaintiff—Appellee,*

versus

Kasha Domingue,

*Defendant—Appellant.*

─────────────────────────────

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-391

─────────────────────────────

Before Ho, Duncan, and Oldham, *Circuit Judges.*

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that appellant pay to appellee the costs on appeal to be taxed by the Clerk of this Court.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 1, 2024
Lyle W. Cayce
Clerk

No. 23-30914

_____

CLIFTON SCOTT DILLEY,

*Plaintiff—Appellee*,

versus

KASHA DOMINGUE,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-391

_____

Before HO, DUNCAN, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

    At around 3:00 a.m. on July 10, 2018, Trooper Kasha Domingue stopped a vehicle. After the driver and another passenger fled, plaintiff Clifton Scott Dilley exited the driver-side rear seat. The parties dispute what happened next. What is undisputed is that Domingue shot Dilley and paralyzed him from the waist down. At summary judgment, the district court denied qualified immunity. We affirm.

No. 23-30914

I

A

We view the facts in the light most favorable to Dilley and draw all reasonable inferences in his favor. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). On an officer's interlocutory appeal from the denial of qualified immunity at summary judgment, we are limited to reviewing "the *materiality* (*i.e.*, legal significance) of factual disputes the district court determined were genuine, not their genuineness (*i.e.*, existence)." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023). Our jurisdiction does not vanish if we conclude some genuine factual dispute persists. Rather, we retain jurisdiction to decide the legal question of whether that fact dispute is material. *See Poole v. City of Shreveport*, 13 F.4th 420, 425, 427 (5th Cir. 2021) (confirming genuineness of factual dispute by reviewing video evidence before analyzing materiality and ultimately affirming on the merits); *accord Ducksworth v. Landrum*, 62 F.4th 209, 216 (5th Cir. 2023) (Oldham, J., concurring in part and dissenting in part) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). And even the limitation on reviewing the genuineness of fact disputes does not prevent us from reviewing available video evidence. *Argueta*, 86 F.4th at 1088; *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

There is some video evidence in this case. Domingue's vehicle did not have a dash cam. And she did not turn on her body-worn camera. But a nearby security camera shows some details of the traffic stop and the shooting. The security camera has no audio.

No. 23-30914

The security footage shows that Trooper Domingue pulled over a four-door SUV with her emergency lights activated. Here is the timeline of what happened next, using the time stamps from the video[*]:

02:13:52: SUV pulls over. Domingue's vehicle is behind it.

02:14:13: SUV driver door opens.

02:14:15: SUV driver exits vehicle with hands raised.

02:14:32: SUV driver starts walking slowly towards Trooper Domingue's vehicle with hands raised.

02:14:38: SUV driver meets Trooper Domingue and hands her something near front bumper of Trooper Domingue's vehicle.

02:14:38 to 02:16:27: SUV driver and Trooper Domingue appear to be talking near front bumper of Trooper Domingue's vehicle.

02:16:28: SUV driver bolts and runs away from Trooper Domingue. Driver runs toward the SUV, runs past the passenger side of the SUV, and then continues running away from Trooper Domingue.

02:16:32: Dilley opens driver-side rear door of SUV. Trooper Domingue approaches SUV.

02:16:33: Dilley exits driver-side rear door of SUV.

02:16:35: Domingue shoots Dilley in the back.

---

[*] The video's time stamps appear to be inaccurate. According to State Trooper radio records, the traffic stop began at 3:02 am (not 2:13 am, as stamped on the video) and concluded at 3:06 am (not 2:17 am, as stamped on the video). We use the video time stamps only because they provide objective, split-second referents for the time that elapsed.

3



Dilley survived the shooting. But he was paralyzed from the waist down.

B

The Louisiana Department of Public Safety ("LDPS") terminated Domingue for her actions. In its termination letter, the LDPS highlighted several troubling details about Domingue's conduct.

It first noted that Domingue "routinely failed to properly record traffic stops and enforcement actions on [her body cam]." ROA.1202. Her failure to turn on the body cam before shooting Dilley meant that "[c]ritical video and audio evidence . . . was not available." *Ibid.* Moreover, Domingue failed to turn on her body cam during a separate use of force the day before she shot Dilley.

Inexplicably, after Domingue shot Dilley with a 9mm Glock pistol, she radioed to dispatch and said, "[t]aser deployed." ROA.1203. Other Troopers responded to the scene and left Dilley bleeding on the ground because

4

they did not know he had been shot. Approximately ten minutes after the shooting, Domingue confessed to another Trooper that she shot Dilley with her handgun. But then she made up a new lie and said that she "took up a defensive position on the right side of [her] vehicle, went down on one knee, drew [her] firearm[,] and fired a shot." ROA.1205. Domingue repeated this story several times, including in an internal affairs investigation. But the surveillance video screen-shotted above proves beyond cavil that Domingue was not kneeling and was not in a defensive posture when she shot Dilley at point-blank range in the back.

The Louisiana State Use of Force Board determined that Domingue repeatedly failed to use her body cam and repeatedly violated Louisiana State Police Policy and Procedure regarding cameras. It further found that Domingue repeatedly lied about her actions and shot Dilley "without any reliable justification." ROA.1211. And it found that Domingue committed criminal negligence. On the basis of these findings, the State Police terminated Domingue.

The East Baton Rouge Parish District Attorney's Office brought Domingue before a grand jury, which charged her with one count of aggravated second-degree battery and one count of illegal use of weapons. Domingue pleaded guilty in 2022.

C

Dilley sued Domingue under 42 U.S.C. § 1983 for using excessive force in violation of the Fourth Amendment. At summary judgment, the district court found several disputes of material fact and denied qualified immunity to Domingue. Our review is de novo. *Morrow*, 917 F.3d at 874.

No. 23-30914

II

Officers cannot use deadly force against a fleeing suspect "where the suspect poses no immediate threat to the officer and no threat to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see also Crane v. City of Arlington*, 50 F.4th 453, 467 (5th Cir. 2022). But if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11. An officer lacks such probable cause, and "violates clearly established law," when "he shoots a visibly unarmed suspect who is moving away from everyone present at the scene." *Poole*, 13 F.4th at 425–26 (collecting cases).

Here, there are numerous disputes of material fact that require us to affirm the district court's denial of qualified immunity. Many of them come from Domingue's own lies about what happened. She said she used a taser, when in fact she shot Dilley with a 9mm pistol. She said she fired from a defensive posture when she instead shot Dilley from point-blank range in the back. Domingue says she warned Dilley to stop before shooting him, but over the course of the State Police investigation, Dilley gave numerous conflicting statements about what she might have said or not said. And her various statements to state investigators about her subjective intentions and state of mind were also wildly inconsistent over time.

Other fact disputes come from the summary judgment evidence. Dilley was unarmed when Domingue shot him, but she said she saw a black object in his hand; the video does nothing to clear up that dispute. *Cf. Scott*, 550 U.S. at 380–81. And Domingue says she felt threatened because Dilley charged her; the video undermines that assertion and shows Dilley running away before Domingue shot him in the back.

6

No. 23-30914

Finally, it should go without saying that shooting an unarmed and non-threatening man in the back without a warning would violate clearly established law. *Garner*, 471 U.S. at 11; *see also Lytle v. Bexar Cnty.*, 560 F.3d 404, 417–18 (5th Cir. 2009) (finding violation of clearly established law on much less egregious facts). The qualified immunity doctrine, and its clearly established law requirement, prohibits us from "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012). And it prohibits us from second-guessing an officer "with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In this case, however, *Domingue's own statements* contradicted what she said at the scene. Thus a jury would not need 20/20 hindsight to disbelieve Domingue.

AFFIRMED.